UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-CV-20564-ALTONAGA

(12-CR-20291-ALTONAGA)

ALINA FEAS,

       Petitioner,

vs.

UNITED STATES OF AMERICA,

       Respondent.

_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER ALINA FEAS'
OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings, and this Court's July 11, 2014 Order (D.E. # 34), the United States of America, by and through its undersigned attorney, hereby files its Response in Opposition to Petitioner Alina Feas' ("Feas" or "Petitioner") Objections to Report and Recommendation of Magistrate Judge ("Objections") (D.E. # 33.) Despite extensive briefing, Petitioner was unable to persuade Magistrate Judge O'Sullivan on the merits of her original claims. Petitioner now makes an eleventh hour attempt to misconstrue and confuse the legal issues which were originally raised in her 2255 petition. For the reasons explained below, this Court should reject Petitioner's Objections, and adopt in full without an evidentiary hearing the thoughtful and carefully-reasoned forty-nine page Report and Recommendation (the "R&R") issued by Magistrate Judge O'Sullivan on May 6, 2014.

**I. PROCEDURAL HISTORY**

On January 31 2013, a grand jury sitting in the Southern District of Florida returned a Superseding Indictment charging Petitioner with one count of conspiracy to commit health care

1

fraud in violation of 18 U.S.C. § 1349 (Count 1 of the Superseding Indictment) and four counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts 7 through 10 of the Superseding Indictment). (*See United States v. Eason, et. al*, 12-20291-CR-Altonaga (Superseding Indictment, D.E. # 295).) Petitioner, a licensed clinical psychologist and mental health counselor, was charged, among other crimes, with conspiring with others at Health Care Solutions Network, Inc. ("HCSN") to commit health care fraud. (*See Id.* at 12.) HCSN operated community mental health centers that purported to provide partial hospitalization program ("PHP") services to individuals suffering from mental illness. (*Id.*) In reality, a majority of the patients attending HCSN did not qualify for treatment. (*Id.*)

On May 7, 2013, Petitioner pled guilty to counts 1 and 7 of the Superseding Indictment, pursuant to a negotiated plea agreement. (Plea Agreement, D.E. # 468.) During the plea colloquy, Petitioner affirmed on the record, amongst other things, that she had the opportunity to read the Plea Agreement and discuss it fully with her attorney before signing it. (*See* Transcript of Change of Plea Hearing Before the Honorable Cecilia M. Altonaga, U.S. District Judge ("Plea Tr."), at 8 (D.E. # 583).) Counsel for Petitioner explained the steps he had taken to familiarize Feas with the charges against her, including being "in constant contact," discussing her chances of success at trial, reviewing the evidence and her potential defenses, reviewing the plea agreements of co-defendants, and having "numerous, numerous, numerous discussions on how to proceed." (*Id.* at 7-8.) Feas affirmed and agreed that her participation in the conspiracy "resulted in a loss of approximately $56,298,900," that the scheme involved "sophisticated means," and that she was a "manager or supervisor" of criminal activity that involved five or more participants and was otherwise extensive. (*Id.* at 12.) The Court then reviewed with Feas her loss amounts and offense levels, explaining what the figures represented and why certain offense levels were increased. (*Id.* at 12-13.) Petitioner also affirmed that nobody had made her any promises or assurances other than those contained in

the written plea agreement" to get her to plead guilty, and that nobody was "putting pressure upon her, forcing her or coercing her to plead guilty to these terms." (*Id.* at 14-15.) The Court found that Petitioner was "fully competent and capable of entering an informed plea," was "aware of the nature of the charges and consequences of her plea," her plea was "knowing and voluntary," was "supported by an independent basis in fact containing each of the essential elements of the offenses," and that Petitioner entered her plea with "the advice and assistance of effective and competent counsel." (*Id.* at 20-21.) After unambiguously advising Petitioner of her right to trial, and explaining the rights that she was giving up by foregoing a trial and signing a Plea Agreement, the Court turned to the Agreed Factual Basis for Guilty Plea ("Agreed Basis"). (*See* Agreed Basis, D.E. # 467); (Plea Tr. at 16.) The Court asked and Petitioner affirmed that she had been given an opportunity to read it and discuss it fully with her attorney before signing. (Plea Tr. at 16-17.) The Court went through the entire Agreed Basis on the record. Petitioner specifically confirmed, among other things, that she was a "clinical director" of HCSN's partial hospitalization program, "oversaw the clinical program," "supervised therapists and other personnel," "signed fabricated therapy notes and medical records," was a "licensed clinical psychologist and mental health counselor," and "double billed for the same patients by using her personal Medicare provider number knowing that HCSN was simultaneously billing the same patients for PHP services." (*Id.* at 18.)

On July 25, 2013, Petitioner was sentenced. (*See* Transcript of Sentencing Hearing Before the Honorable Cecilia M. Altonaga, U.S. District Judge ("Sentencing Tr.") (D.E. # 581).) During the sentencing hearing, counsel identified for the Court specific facts about Petitioner's involvement of the scheme, educated the Court about her similarities and differences from other co-conspirators, and reminded the Court that Petitioner continued to cooperate and be debriefed by the government. Counsel called multiple witnesses to testify in support of his 3553 arguments for Petitioner, and alerted the Court to letters that had been filed in support of Petitioner. (*Id.* at 17.) During the

sentencing hearing, Petitioner was given multiple opportunities to address the Judge. Petitioner refused a first time, and the Court again inquired, explaining that Petitioner must respond on the record "so that the reviewing court could see that [Feas] had voluntarily waived her right to address [the Judge] at sentencing." (*Id.* at 34.) And again, Petitioner waived this right, saying only "no, no thank you." (*Id.*) Ultimately, the Court sentenced Feas to an aggregate term of 135 months imprisonment, 3 years supervised release, and restitution in the amount of $24,104,431.24, and a $200 assessment. (*Id.* at 41.); (D.E. # 534.) After the sentence was imposed Feas was again given an opportunity to object to the Court's findings or the manner in which it was imposed. (*Id.* at 43.) Petitioner failed to object. Petitioner also did not appeal her conviction or sentence.

On February 14, 2014, Petitioner filed a Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Motion") alleging, among other things, that her former counsel provided ineffective assistance of counsel before the plea agreement, during the change of plea hearing, and at sentencing, and that former counsel conducted themselves in the case under a conflict of interest. (D.E. # 1, 4.) Petitioner has not previously filed a motion under 22 U.S.C. § 2255 or received a related evidentiary hearing.

On April 1, 2014, the Government filed its Response in Opposition to Petitioner's Motion. (D.E. # 12.) The Government argued that Petitioner's claims of ineffective assistance of counsel did not meet the requisite showing based on the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), because her statements during the change of plea hearing and sentencing contradict her Sworn Declaration, and that Petitioner's former counsel did not labor under an actual conflict of interest. (D.E. # 12.)

On May 1, 2014, Petitioner filed a Traverse with Incorporated Memorandum of Law ("Traverse") (D.E. # 27) in response to the Government's Reply.

On June 9, 2014, the Magistrate filed his lengthy R&R (D.E. # 29.) The R&R recommended that Petitioner's Motion be denied in full. (D.E. # 29, at 49.)

On July 9, 2014, Petitioner filed her Objections to the R & R (D.E. # 33.) Petitioner requested that the Court enter an order rejecting in whole the findings and recommendations made by the Magistrate Judge and ordering that an evidentiary hearing be held by either the District Judge or the Magistrate Judge, or in the alternative, rejecting in whole the findings and recommendations made by the Magistrate and granting Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255. (D.E. # 33.) Pursuant to this Court's July 11, 2014 Order (D.E. # 34), the Government now responds in opposition to these Objections.

## II.    MEMORANDUM OF LAW

### a)    Standard of Review

A district judge may accept, reject, or modify a magistrate judge's report and recommendation upon conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Legal conclusions are also reviewed de novo, even in the absence of an objection. *See Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). As an initial matter, the Government notes that Petitioner did not directly object to the Magistrate's finding that the unsworn Statement of Professor Douglas A. Berman (D.E. # 27-1) and the Affidavit of Ruben Oliva, Esq. (D.E. # 27-3) are not helpful to the Court in determining whether the Petitioner's former counsel rendered ineffective assistance. (D.E. # 29, at 21.) While Petitioner's Objections do include a section titled "Expert Opinion" (D.E. # 33, at 16-18), and the section identifies "expert affidavits in this case," Petitioner neither references either individual by

5

name, nor requests that the testimony of the above two be utilized at an evidentiary hearing. Petitioner also does not object to the Magistrate's finding that an unsworn statement is not an affidavit, so Petitioner's reference to multiple expert affidavits in the present case is therefore presumed to be a grammatical error. Consequently, the Government will not address these portions of the R&R, as they are uncontroverted.

    b)  **Evidentiary Hearing Not Necessary**

Petitioner objects to the R&R's finding that there is no need for an evidentiary hearing on this matter. This objection is unfounded. The burden of establishing the need for an evidentiary hearing is on the petitioner. *Jenney v. United States,* No. 09-60248-CIV, 2010 WL 768883, at *8 (S.D. Fla. Mar. 8, 2010) (order adopting report and recommendation) (*citing Brit v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984).) Petitioner has not met this burden. Petitioner neglected to even ask for an evidentiary hearing in her initial 2255 Motion to Vacate. (D.E. # 29 at 18.) Petitioner does not object to the Magistrate's finding regarding this critical failure to request a hearing.

In a belated attempt to repair this fatal procedural failure, more than two and a half months after filing her 2255 Motion to Vacate, Petitioner made an indirect request for an evidentiary hearing in her Traverse, stating the need for an evidentiary hearing [is] apparent." (D.E. # 27, at 1.) It is not. "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (*quoting Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979).) Where a 2255 Motion to Vacate is supported by nothing more than generalized allegations which are affirmatively refuted from the record, no evidentiary hearing is necessary. *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991). When a defendant wishes to withdraw h[er] plea after [s]he

states at a Rule 11 hearing that it was freely and knowingly given, [s]he faces an uphill battle in persuading the judge that h[er] purported reason for withdrawing h[er] plea is fair and just." *United States v. Schilling*, 142 F.3d 388, 398 (7th Cir. 1998) (internal quotations omitted).  There is a strong presumption that a defendant's statements made during a plea colloquy are true.  (D.E. # 4 at 13); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  As the Magistrate properly found in his R&R, the evidentiary record at the change of plea hearing and the sentencing hearing affirmatively contradicts the petitioner's factual assertions.  (D.E. # 29 at 20.)  Therefore, even when viewing the facts in the light most favorable to Petitioner, the record conclusively establishes that Petitioner was not provided ineffective assistance of counsel, and that her conviction and sentence do not violate the Constitution.

Nonetheless, Petitioner now boldly asserts that, in "summarily conclud[ing]" that Petitioner's Motion should be denied without a hearing, the Magistrate's R&R was "in contravention of applicable case law" when it considered "Petitioner's Sworn Declaration alone" and did not consider the affidavits filed by two third parties with firsthand knowledge of the purportedly defective counsel.  (D.E. # 33 at 6.)  These would be the affidavits of Petitioner's son Jerry Feas (D.E. # 4-3) and Petitioner's friend Lissette Gonzalez (D.E. # 4-3.)[1]  In fact, the Magistrate considered and referenced these two affidavits more than fifteen times in various sections of the R&R.  (*See, e.g.*, D.E. # 29 at 3, 45.)

In support of her claim that an evidentiary hearing is necessary, Petitioner relies heavily on the case of *United States v. McCord*, 618 F.2d 389 (5th Cir. 1980).  Petitioner contends that several of the facts of the present case match those of *McCord*.  (D.E. # 33 at 3.)  Petitioner's reliance is

---

[1] Jerry Feas' original affidavit (D.E. # 4-2) was later supplemented, after the issuance of the Magistrate's R&R, with a new version (D.E. # 32-1.)  Petitioner indicates this supplement was filed because the original affidavit failed to include page 4.  (*See* D.E. # 32.)

misplaced. While both cases involve 2255 Motions to Vacate, and both cases address the use of affidavits to support petitioners' attempts to refute testimony given under oath at change of plea and sentencing hearings, there are few other similarities. In *McCord*, the petitioner had pleaded guilty to three counts of a federal indictment, and was sentenced to ten years imprisonment followed by five years probation. He subsequently filed a 2255 Motion to Vacate, claiming that the Government, through its FBI agents, had originally promised him a deal where he would plead guilty to just one count and receive only probation, in exchange for cooperating and providing the government with substantial assistance. An R&R was issued denying his 2255 Motion to Vacate without an evidentiary hearing, and the District Court adopted it. On appeal to the Fifth Circuit, McCord requested an evidentiary hearing about whether the government induced a guilty plea by an unkept plea bargain, and failed to honor its original plea bargain. (*Id.* at 392.) In making its decision to remand the case and grant an evidentiary hearing on appeal, the Fifth Circuit focused, in part, on the contents of a sworn affidavit by an FBI agent on the case, which was not referenced in the original R&R, but corroborated the possibility of earlier plea negotiations that involved the promise of probation and pleading to only one count. (*Id.* at 393.) In noting the large potential sentencing disparity at issue, and commenting that "[a]t stake is the honor of the United States," the Fifth Circuit remanded the case for an evidentiary hearing. (*Id.* at 395.) Ultimately, even the affidavit of the FBI agent was not sufficient for McCord to meet his burden, and his original motion was denied.

As a baseline issue, Feas is not similarly situated to the petitioner in *McCord* because both third party affidavits in the Feas case are referenced multiple times in the Magistrate Judge's R&R, whereas the affidavit in *McCord* was neither acknowledged nor referenced in that R&R. The affidavits at issue in the present case are from Petitioner's son and Petitioner's close friend, not an FBI agent working the opposite side of the *McCord* case. Furthermore, at issue in the present case

8

is purported ineffective assistance of counsel, not whether the government improperly induced a guilty plea.  In the present case, as the R&R acknowledges, nowhere in Petitioner's Memorandum, sworn declaration, or Traverse does she state that she would have proceeded to trial.  (D.E. # 29 at 33.)  Even if, *arguendo*, Petitioner had pleaded guilty to the indictment, she would have then likely pleaded guilty to additional counts beyond those included in the written plea agreement.  And, as the Magistrate noted in his R&R, no showing has been made that had Petitioner pled guilty to the charges against her in the indictment without a plea agreement, the Court would not have found the same sentencing enhancing factors were applicable.  (D.E. # 29 at 33.)  Consequently, the possible disparity in length of incarceration at issue in *McCord* is simply not present in the case at hand.  Any statements of prejudice by Petitioner are merely conclusory.  For the above reasons, neither the analysis nor holding in *McCord* are particularly instructive to the present case.

        c)        **No Corroborated Evidence of Ineffective Assistance**

Petitioner makes several objections – both general and specific – to the Magistrate's finding that there was no ineffective assistance of counsel.  (*See* D.E. # 33 at 10.)   The legal standard governing ineffective-assistance-of-counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Supreme Court established a two-prong test for adjudicating such claims.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel").  In the context of a challenge to a guilty plea, Petitioner must establish that her counsel's performance was deficient and that a reasonable probability exists that she would not have pleaded guilty but for counsel's errors.  *Strickland*, 466 U.S. at 687; *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986).  For counsel's performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence.  *See*

9

*Strickland*, 466 U.S. at 690.  Review of counsel's conduct is to be highly deferential.  *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).  Though Petitioner claims former counsel were "plainly derelict in their duties," and were a "complete and utter failure," these brash phrases do not change the analysis.  (*See* D.E. # 33 at 3, 10.)  For the reasons set forth below, Petitioner's Objections fail to change the Magistrate's finding that Petitioner entered her plea voluntarily, knowingly and intelligently, and such Objections should be overruled.

Petitioner broadly objects alleges that Messrs. Egelston and Kubiliun did "nothing at all" and misrepresented "that they did not have access to documents and/or evidence turned over by the Government or made available to them by the Government."  (D.E. # 33 at 17-18.)  In support of this objection, Petitioner cites generally to the affidavits of Jerry Feas and Lissette Gonzalez, though no specific page citation is provided.  (*Id.*)  However, no portion of either affidavit specifically alleges Egelston and Kubiliun misrepresented that they did not have access to documents or evidence.  What the two affidavits do include are numerous references to specific actions that former counsel did take, such as meeting with Petitioner, reviewing the facts of the case, and discussing the PSI, which contradicts Petitioner's claim of complete inaction.  (*See, e.g.,* D.E. # 4-3 at 8.)  Based on the lack of evidentiary support, Petitioner's broad and unsupported objections should be overruled.

Petitioner disputes the Magistrate's finding that Petitioner's claim of ineffective assistance had no merit, and again challenges the constitutional effectiveness of the assistance she received from former counsel "in deciding to plead guilty." (*See* D.E. # 33 at 10.)  In doing so, Petitioner cites former counsel's "complete and utter failure in familiarizing themselves with the facts and the law." (*Id.*)  The record affirmatively contradicts this allegation of "complete and utter failure."  As referenced in the R&R, former counsel explained to the Court on the record what steps he had taken to "familiarize Ms. Feas with the charges against her, the government's evidence, her defenses, her

right to proceed to trial and the consequences of a guilty plea. (D.E. # 29 at 10, 28) (*citing* Change of Plea Transcript, D.E. # 583 at 7.) Amongst other things, former counsel explained that "[w]e have gone over the evidence, we have gone over her defenses," and "we have gone over everything with respect to all the details surrounding this case," and "we have had numerous, numerous, numerous discussions on how to proceed." (D.E. # 29 at 11) (*citing* Change of Plea Transcript, D.E. # 583 at 7-8.) As the Magistrate noted, Petitioner agreed with these representations. (D.E. # 29 at 29.) No evidence has been presented to refute this. Both the affidavits of Jerry Feas and Lissette Gonzalez provide numerous references to meetings with Petitioner's former counsel to discuss the details of the case. This hurts, not helps, Petitioner's claim. In support of her claim that she was not "fully appraised of the consequences of the guilty plea," Petitioner attempts to distinguish the facts of the present case from several cases cited by the Magistrate. (*See* D.E. # 33 at 13-15.) However, Petitioner fails to cite to any specific portion of the record, be it transcript, affidavit, or other, which would support this claim. Simply put, the record contradicts Petitioner's claim that former counsel completely and utterly failed to familiarize themselves with the facts and the law, and failed to explain the consequences of entering into a guilty plea.

Petitioner also objects that, contrary to the Magistrate's conclusions in the R&R, "[g]uilty pleas are not invulnerable to subsequent challenge even when a § 2255 petitioner repudiates statements made to the sentencing judge at the time the plea was entered." (D.E. # 33 at 10.) Petitioner specifically takes issue with the Magistrate's finding that "[t]he petitioner cannot disavow the sworn statements she made under oath to this Court by now claiming that she was just following counsels' erroneous advice." (D.E. # 33 at 10) (*citing* D.E. # 29 at 35.) In support of this, the lead case that Petitioner cites is *McCrod* [sic], but *McCord, supra,* is a case that has nothing to do with ineffective assistance, or with counsel's advice. Petitioner also cites, among others, the case of *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) for the premise that "while a prisoner may not

11

ordinarily repudiate statements made to the sentencing judge when the plea was entered," there is no "per se rule." *Blackledge*, 431 U.S. at 73.  The Government does not dispute this premise. However, Petitioner oversimplifies the legal analysis.  The actual legal question is not whether such pleas can ever be attacked, but what sources and evidence can be the proper basis for such a challenge, whether the allegations are sufficiently detailed, and whether the petitioner has been able to meet the high bar for challenging the strong presumption that a defendant's statements made during a plea colloquy are true.  (*See*, *e.g.,* D.E. # 29 at 35-36) (internal citations omitted.)   After taking all of this into consideration, the Magistrate correctly found that Petitioner's allegations were not only too vague and conclusory to meet the requisite burden, but also often inconsistent and contradictory.  (*See, e.g.,* D.E. # 29 at 26, 27).

Petitioner also objects that it is speculative of the Magistrate to state that "[w]ithout the plea agreement, the petitioner would have pled guilty to all five counts in the indictment."  (D.E. # 33 at 10) (*citing* D.E. # 29 at 33.)  The Government disagrees.  If there were no plea agreement, to the extent that Petitioner refused to plead guilty to any counts in the indictment, this means she would have maintained her innocence, and thus opted to go to trial, on these counts.  In the context of a challenge to a guilty plea, Petitioner must show that there is a "reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 US at 59.  Nowhere on the record does Petitioner dispute her actual guilt.  Likewise, the record is devoid of any evidence suggesting that, but for ineffective counsel, Petitioner would have gone to trial rather than plead guilty.  At no point during her change of plea or sentencing hearings, or in her written Plea Agreement or Agreed Basis, does Petitioner dispute the evidence.  To the extent that Petitioner is making a broader objection as to the potential prejudice of a plea agreement, as the R&R found, "the petitioner cannot prevail on this claim as no prejudice has been established

arising from her former counsels' failure to advice the petitioner that she could plead guilty without a plea agreement." (D.E. # 29 at 33.).

### d) No Conflict of Interest Exists

In her Objections, Petitioner continues to insist that her attorneys had an actual conflict of interest. As the Magistrate explained in the R&R, this claim has no merit because Petitioner "has not met her burden of showing: (1) an actual conflict of interest or (2) an adverse effect." (D.E. # 29 at 43.) Petitioner herself concedes that a successful claim requires "a factual showing of inconsistent interests" made by "pointing 'to specific instances in the record.'" (D.E. # 33 at 18) (*citing Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987).) As the Magistrate correctly identified, "the Petitioner points to no instances in the record which would suggest that attorneys Kubiliun and Egelston were laboring under divided loyalties." (D.E. # 29 at 44.) Nonetheless, Petitioner again raises this issue in her Objections, and again it fails for at least two basic reasons.

First, the record unambiguously establishes that there is no actual conflict of interest. Petitioner cites "the close personal relationship between Ms. Collado-Hudak and Ms. Pampin." (*id.* at 20) as a reason to distinguish the present case from the facts in *Aguilar-Garcia v. U.S.*, 517 F. App'x 880 (11th Cir. 2003), a case that found no conflict existed because no relationship was shown between counsel and a government investigation target. (D.E. # 33 at 20.) Petitioner claims in her Objections that "the existence of an actual conflict of interest isself-evident." [sic]. (D.E. # 33 at 19.) It is not. The record establishes that Petitioner's attorneys were Egelston and Kubiliun. (D.E. # 29 at 45); (D.E. # 4-3 at 7.) Petitioner's attorneys were her advocates and hers alone. They had no attorney client relationship, formal or informal, with any other relevant party, other than Feas. Likewise, as even Petitioner concedes, Collado-Hudak was not the counsel of record for the government, for Petitioner, for Pampin, or for any other defendant in this case. (D.E. # 4 at 7.) Finally, Petitioner does not cite to a close relationship – or any relationship – between her attorneys

13

and Ms. Pampin, because the record establishes that there is none. As the Magistrate properly pointed out in his R&R, it is this lack of any relationship that makes the holding in *Aguilar-Garcia* directly applicable, and renders any conflict of interest claim moot. (*See* D.E. # 29 at 43-44.)

Second, even if assuming, *arguendo*, that Petitioner had been able to establish an actual of conflict of interest, Petitioner still cannot make the requisite showing that the conflict had an adverse effect. (*See* D.E. # 29 at 43.) The Eleventh Circuit has stated that after establishing an actual conflict of interest, the Petitioner "still must show that this conflict adversely affected counsel's performance." (*Id*. at 48) (*citing Downs v. Sec'y, Fla. Dept's of Corr.,* 738 F.3d 240, 265 (11th Cir. 2013).) To prove adverse effect, "a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001). Petitioner has not met this burden. Unable to cite to any evidence whatsoever that Collado-Hudak somehow relayed information from the Petitioner to third parties, thus resulting in lower sentences for the co-defendants, Petitioner now focuses on former counsel's purported failure to pursue alternative strategies. Specifically, Petitioner points to Egelston and Kubiliun's alleged strategy of "deliberate failure to investigate any of the government's alleged evidence," and proposes that "a full investigation of the facts" would have been a plausible, reasonable alternative strategy that could have been followed but was not because of the attorneys' alleged conflicting loyalties. (D.E. # 33 at 20.) As best the government can tell, Petitioner is suggesting that former counsel did not review any evidence whatsoever, and they allegedly did so because of a purported loyalty to someone who they did not ever represent, and Collado-Hudak did not ever represent. This attenuated line of reasoning is unfounded and conclusory. "Bare allegations […] which are affirmatively contradicted by the record, are insufficient to warrant an evidentiary hearings."

14

*Jenney v. United States*, No. 09-60248-CIV, 2010 WL 768883, at 3 (S.D. Fla. Mar. 8, 2010) (internal citations omitted). As the Magistrate identified in his R&R, there is no evidence that Petitioner's former counsel advocated less vigorously on behalf of the petitioner in order to benefit Ms. Pampin. (D.E. #29 at 48.) Therefore, despite raising new rationales for the same claim, petitioner's renewed claim of ineffective assistance of counsel based on a conflict of interest still fails.

### III.   CONCLUSION

For the foregoing reasons, the United States respectfully submits that Petitioner's Objections to the Magistrate Judge's Report & Recommendation should be overruled, and that her Motion to Vacation Conviction Pursuant to 28 U.S.C. § 2255 should be denied.

Respectfully submitted,

WIFREDO FERRER
UNITED STATES ATTORNEY

By:   /s/ *Anne P. McNamara*
Anne P. McNamara
Trial Attorney
Court Id. No. A5501847
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 304-2946
Fax: (202) 514-6118
Anne.McNamara@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court and all counsel of record via CM-ECF on July 28, 2014.

**Dated:** July 28, 2014

By:     /s/ *Anne P. McNamara*
Anne P. McNamara
Trial Attorney
Court Id. No. A5501847
United States Department of Justice
Criminal Division, Fraud Section